UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-cv-24134-WILLIAMS/MCALILEY

TRISURA SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

v.

BLUE HORSE TRUCKING CORPORATION,
NELSON BETANCOURT and
JUAN GABRIEL REYES SANCHEZ,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS COMPLAINT FOR DECLARATORY
JUDGMENT OR IN THE ALTERNATIVE MOTION TO STAY**

Pending before the Court is Defendant Juan Gabriel Reyes Sanchez's ("Sanchez") Motion to Dismiss Complaint for Declaratory Judgment or in the Alternative Motion to Stay (the "Motion"), which Defendants Blue Horse Trucking Corporation ("Blue Horse") and Nelson Betancourt ("Betancourt") joined. (ECF Nos. 16, 17, 19). Plaintiff Trisura Specialty Insurance Company ("Trisura") filed a response, Defendants a reply and, with the Court's permission, Trisura a surreply. (ECF Nos. 20, 23, 25, 26, 37, 38). The Honorable Kathleen M. Williams referred the Motion to me for a report and recommendation. (ECF No. 24). Having carefully reviewed the parties' memoranda, the applicable law, and the pertinent portions of the record, for the reasons explained below, I recommend that the Court deny the Motion.

1

## I.  BACKGROUND

This case involves an insurance coverage dispute. Plaintiff Trisura, an insurance company, asks this Court to declare that it has no duty to defend and indemnify Defendants Blue Horse and Betancourt in a state lawsuit that Defendant Sanchez filed against them in Miami-Dade County, Florida. (Compl., ECF No. 1). Trisura is not a party in that suit. It has, however, been funding the defense of Blue Horse and Betancourt under a reservation of rights, and discovery is ongoing in those proceedings. *See* (*id.* ¶ 26); *see also* (ECF Nos. 16-2, 23-1, 23-2).

Sanchez's state court Complaint alleges that Blue Horse owned a tractor-trailer and authorized Betancourt and Sanchez to operate it as a team. (State Compl., ECF No. 1-2). On July 22, 2020, Betancourt drove the vehicle while Sanchez slept in the passenger compartment. (*Id.*). Betancourt lost control of the vehicle and it overturned, causing a catastrophic injury to Sanchez. (*Id.*).

Sanchez filed his lawsuit in state court in September 2020. It has four counts: three against Blue Horse for (i) vicarious liability, (ii) failure to inspect and maintain the vehicle and (iii) failure to train and evaluate Betancourt, and one against Betancourt for (iv) negligence. (*Id.*). Notably, Sanchez's claim of vicarious liability rests on Blue Horse's ownership of the tractor-trailer. (*Id.*). That is, Sanchez alleges that Blue Horse is responsible for Sanchez's injuries because Blue Horse owned the vehicle and gave consent to Betancourt to operate it. (*Id.*). Sanchez does not claim that Blue Horse is liable based on an agency theory; that is, that Betancourt was Blue Horse's employee and was acting within the scope of his authority at the time and place of the incident. (*Id.*).

At the time of the accident Trisura insured Blue Horse under a commercial auto and general liability policy. (the "Policy", ECF No. 1-1). The Policy provides that Trisura will pay all sums that Blue Horse legally must pay as damages because of bodily injury caused by an accident and must defend Blue Horse against a lawsuit seeking damages for such bodily injury, unless excluded. (*Id.* at 7, 8, 53).

According to Trisura, the Policy's relevant exclusions are: (i) Workers' Compensation,[1] (ii) Employee Indemnification and Employer's Liability,[2] (iii) Fellow Employee,[3] (iv) Workers' Compensation and Similar Laws,[4] (v) Employer's Liability[5] and (vi) Aircraft, Auto or Watercraft.[6] (Compl., ECF No. 1 ¶¶ 29, 38). Defendants contend that only those first three are at issue. (ECF No. 23 at 3). Although the parties disagree on which exclusions may apply, they agree on one thing: whether the Policy excludes coverage turns on whether Betancourt and Sanchez were employees of Blue Horse under applicable law

---

[1] This excludes coverage for: "Any obligation for which the insured or the insured's insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." (ECF No. 1-1 at 9) (quotation marks omitted).

[2] This excludes coverage for: "Bodily injury to: (a) An employee of the insured arising out of and in the course of: (1) Employment by the insured; or (2) Performing the duties related to the conduct of the insured's business . . . ." (ECF No. 1-1 at 9) (quotation marks omitted).

[3] This excludes coverage for: "Bodily injury to: (a) Any fellow employee of the insured arising out of and in the course of the fellow employee's employment or while performing duties related to the conduct of your business . . . ." (ECF No. 1-1 at 9) (quotation marks omitted).

[4] This excludes coverage for: "Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." (ECF No. 1-1 at 54).

[5] This excludes coverage for: "Bodily injury to: (a) An employee of the insured arising out of and in the course of: (1) Employment by the insured; or (2) Performing the duties related to the conduct of the insured's business . . . ." (ECF No. 1-1 at 54) (quotation marks omitted).

[6] This excludes coverage for: "Bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured . . . ." (ECF No. 1-1 at 56) (quotation marks omitted).

and whether they were acting within the scope of their employment at the time of the accident.

The Policy also includes a Form MCS-90 Endorsement, designed to assure compliance with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration. (ECF No. 1-1 at 34-36). The Endorsement provides that Trisura "agrees to pay, within the limits of liability described herein, any final judgment recovered against [Blue Horse] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles . . . ." (*Id.* at 35). It excludes coverage for "injury to or death of [Blue Horse's] employees while engaged in the course of their employment". (ECF No. 1-1 at 35). Again, the application of this exclusion turns on whether Betancourt and Sanchez were employees of Blue Horse.

Trisura asks this Court to issue a declaration that: (i) it has no duty to defend Blue Horse and Betancourt in the state court lawsuit, (ii) it has no duty to indemnify Blue Horse and Betancourt for claims arising from the accident and (iii) it has no obligation related to the accident or the state court lawsuit that arises from the Form MCS-90 Endorsement. (ECF No. 1 at 6-9). Trisura claims that the Policy excludes coverage and the Form MCS-90 Endorsement does not apply because Betancourt and Sanchez "were employees of Blue Horse Trucking under applicable law and were acting within the course and scope of their employment at the time of the Accident". (ECF No. 20 at 3-4).

Sanchez, Betancourt and Blue Horse now move to dismiss or stay this declaratory judgment action. (ECF No. 16). They ask this Court to exercise its discretion to decline jurisdiction over this case because "the state court action is 'parallel' and the *Ameritas*

4

factors favor dismissal." (*Id.* at 6). Trisura responds that the two actions are not parallel, and even if they are, the factors under *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005) favor the Court's exercise of jurisdiction over this suit. (ECF No. 20).

I conclude that the state and federal actions are not parallel and that the *Ameritas* factors do not favor dismissal.

## II.  STANDARD

The Court has wide discretion to determine whether to entertain an action for declaratory judgment. *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) ("It is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory.") (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995)). The Declaratory Judgment Act gives federal courts competence to make a declaration of rights, but it does not impose a duty to do so. *Ameritas*, 411 F.3d at 1330 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).

Federal courts should exercise their discretion to dismiss declaratory judgment actions when a parallel state action is pending. *Id.* (citing *Brillhart*, 316 U.S. at 495); *see also Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390-91 (5th Cir. 2003) ("[I]f the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit."). The Supreme Court of the United States found that it would be "uneconomical" and "vexatious" to

5

proceed in a declaratory judgment suit when a parallel state suit is pending, and that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495. State and federal actions are parallel when they involve parties and issues that are "substantially the same". *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016).

Regardless of whether the actions are parallel, a district court should weigh all relevant factors in deciding whether to exercise its discretion to dismiss a declaratory judgment case. *Id.* In *Ameritas*, The Eleventh Circuit provided this non-exhaustive list of factors for courts to consider:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

6

> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331. These are known as the "*Ameritas* factors". No single factor controls and not every factor will be relevant in every case. *First Mercury*, 648 F. App'x at 866 (citing *Ameritas*, 411 F.3d at 1331).

### III.    ANALYSIS

#### A.  Parallel proceedings

The parties in the state and federal proceedings are substantially the same. Defendants here, are adverse parties in the state action. Only Trisura, plaintiff here, is not a party in the state lawsuit, although it is funding a defense for Blue Horse and Betancourt under a reservation of rights. "It is not necessary for [the plaintiff] to be a party to the [state suit] in order to conclude the parties involved in both actions are similar". *Falls Lake Nat'l Ins. Co. v. Am. Shuttle, Inc.*, No. 17-cv-24421, 2018 WL 8244524, at *3 (S.D. Fla. Aug. 13, 2018); *see also Mid-Continent Cas. Co. v. Northstar Homebuilders, Inc.*, 297 F. Supp. 3d 1329, 1335 (S.D. Fla. 2018) (the parties were substantially the same where the plaintiff insurance company was not a party in the state suit but was providing a defense to the defendant under a reservation of rights).

The issues in the two lawsuits, however, are not substantially the same. The primary issue in this coverage suit is whether Betancourt and Sanchez were employees of Blue Horse and whether they were acting within the scope of their employment at the time and place of the accident. Sanchez's state court action does not raise this issue. Specifically,

Sanchez's negligence claim against Betancourt does not require the state court to decide if Betancourt and Sanchez were employees of Blue Horse. Nor does Sanchez's claims against Blue Horse for (1) failure to inspect and maintain the vehicle, and (2) failure to train and evaluate Betancourt.

That leaves Sanchez's claim for vicarious liability against Blue Horse which, at first blush, appears to present a closer question.[7] Importantly, this claim rests upon Florida's "dangerous instrumentality" doctrine, not an agency theory. *See* (State Compl., ECF No. 1-2 ¶¶ 7, 9) ("BLUE HORSE was the *owner* of a commercial motor vehicle, *operated with its consent*, by BETANCOURT. . . BLUE HORSE, as the *owner* of the commercial vehicle is vicariously liable for the negligence of BETANCOURT and the resulting damages sustained by SANCHEZ."); *see also Saullo v. Douglas*, 957 So.2d 80, 86 (Fla. 5th DCA 2007) ("We generally see the dangerous instrumentality doctrine applied to impose strict vicarious liability on the owner of a motor vehicle who voluntarily entrusts it to a person whose negligent operation causes injury to another. The doctrine is not based on respondeat superior or agency, but on the practical fact that *the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse* of this instrumentality by anyone operating it with his knowledge and consent.") (alteration in original) (quotation marks and citations omitted). This requires Sanchez to prove that

---

[7] Defendants' argument focuses on this claim. *See* (ECF No. 16 at 7-10).

Blue Horse owned the vehicle and expressly or impliedly consented to Betancourt's use of it. *See* Fla. Std. Jury Instr. (Civ.) 401.14.[8]

Thus, for Sanchez to prove his claim for vicarious liability, he need not prove that Betancourt and Sanchez were employees of Blue Horse. And Blue Horse need not address the question of employment, to defend against Sanchez's claim or to support its affirmative defenses.[9]

Defendants argue that an issue in the state suit is whether Blue Horse was required to provide, and whether Sanchez is entitled to, workers' compensation benefits and that this is a reason to find that the issues in the state and federal proceedings substantially overlap. (ECF No. 16 at 9-10). I am not persuaded. Defendants do not sufficiently explain why the state court would decide this issue, and I note that neither Sanchez's state court Complaint nor Blue Horse's Answer and Affirmative Defenses make any mention of workers' compensation. *See* (ECF Nos. 1-2, 20-1).

Defendants argue that the issue of an employment relationship between Blue Horse and Betancourt and Sanchez, is being addressed in the state court discovery process. The discovery materials Defendants filed with this Court, however, do not plainly support this argument. *See* (ECF Nos. 16-2, 23-1, 23-2).

---

[8] Florida Standard Jury Instruction 401.14 provides different theories for vicarious liability. Part (a), "*Owner, lessee, or bailee of vehicle driven by another*", applies to Sanchez's claim as pled, while part (b), "*Agency*", does not. *Compare* Fla. Std. Jury Instr. (Civ.) 401.14a, *with* Fla. Std. Jury Instr. (Civ.) 401.14b.

[9] Blue Horse asserts eleven affirmative defenses, none of which require proof of an employer-employee relationship. *See* (Answer & Affirmative Defenses, ECF No. 20-1 at 4-7). Although Defendants argue here that workers' compensation immunity can be a liability defense to a negligence action, (ECF No. 16 at 10 n.7), Blue Horse has not raised that defense in the state suit.

I conclude that the issues in the state and federal proceedings are not substantially the same and, therefore, the two suits are not parallel.[10] Following the Eleventh Circuit's guidance in *First Mercury Ins. Co.*, 648 F. App'x at 866, I next turn to the *Ameritas* factors.

### B. The *Ameritas* factors

#### 1. State's interest

The first factor – "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts" – weighs somewhat in favor of dismissal. *Ameritas*, 411 F.3d at 1331. Florida certainly has an interest in its courts deciding controversies governed by Florida law, and Florida law does govern the substantive issues regarding the Policy. *See Mid-Continent Cas. Co.*, 297 F. Supp. 3d at 1336 ("Given Florida law, not federal, governs the substantive issues raised, Florida has a strong interest in this case . . . ."). Yet, Florida courts do not "have a particularly strong interest in deciding the coverage issues properly and exclusively before a federal court." *Arch Specialty Ins. Co. v. Residences at the Bath Club Condo. Ass'n*, No. 20-23164-CIV, 2020 WL 6888312, at *4 (S.D. Fla. Sept. 22, 2020) (quotation marks and citation omitted). While insurance coverage declaratory judgment actions will involve overlapping facts with the underlying tort action, "such declaratory judgment actions deciding coverage routinely coexist with state-court litigation concerning liability." *Essex Ins. Co. v. Foley*, No. 10-0511-WS-M, 2011 WL 290423, at *3 n.5 (S.D. Ala. Jan. 27, 2011).

---

[10] Sanchez makes an additional argument that the parties to the state suit could assert other theories of liability, which may trigger other insurance clauses not presently at issue. (ECF No. 16 at 10-11). This is entirely speculative and cannot support dismissal of this action.

### 2. Whether the judgment in this action would settle the controversy

Defendants concede that the second factor – "whether the judgment in the federal declaratory action would settle the controversy" – weighs against dismissal. *Ameritas*, 411 F.3d at 1331; (ECF No. 16 at 11 n.8). I agree. A judgment in this action would settle the coverage dispute between Trisura and Blue Horse, Betancourt, and Sanchez. It would not, however, settle the controversy in the state court proceedings. Similarly, a judgment in the state suit, which would resolve the issue of liability, would not settle the coverage dispute with Trisura. *Cf. Mt. Hawley Ins. Co. v. JP Roosevelt, LLC*, No. 20-20186-CIV, 2020 WL 6134269, at *6 (S.D. Fla. Apr. 9, 2020) (finding the second *Ameritas* factor favors dismissal because "[w]hile a judgment in this action would settle the coverage dispute between Plaintiff and Defendant, a judgment in the state court would resolve the entire case for all parties involved") (citation omitted).

### 3. Useful purpose in clarifying the legal relations

Defendants also concede that the third factor – "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue" – weighs against dismissal. *Ameritas*, 411 F.3d at 1331; (ECF No. 16 at 11 n.8). I agree. This action would clarify contractual obligations – specifically, whether Trisura has a duty to defend Blue Horse and Betancourt in the ongoing state action. The state proceedings will not address this issue.

### 4. Procedural fencing

Defendants concede that the fourth factor – "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing'—that is, to provide an arena for

11

a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable" – does not weigh in favor of dismissal. *Ameritas*, 411 F.3d at 1331. I agree. Nothing in this case suggests that Trisura is using this Court for such purpose. *See Underwriters at Lloyd's London v. Osting-Schwinn*, No. 05-CV-1460-17TGW, 2006 WL 947815, at *4 (M.D. Fla. Apr. 12, 2006) ("[T]here is no requirement to bring suit in a state court when the proper forum between such diverse parties is the Federal Court . . . .").

### 5. Friction between state and federal courts

The fifth factor – "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction" – weighs against dismissal. *Ameritas*, 411 F.3d at 1331. The issues in this case are not before the state court, and therefore, this Court's determination of coverage would not encroach upon the state court's authority over the suit regarding liability. *See Arch Specialty Ins. Co.*, 2020 WL 6888312, at *4 ("[A] decision on Plaintiff's duty to defend would not impinge on the state court's jurisdiction, as that issue is not before the state court.") (citation omitted); *cf. Mt. Hawley Ins. Co.*, 2020 WL 6134269, at *7 (finding the fifth *Ameritas* factor favored dismissal because "Plaintiff's declaratory action creates the potential for friction inherent in having *double-tracked, near-identical litigation* pending in both the federal and state courts, such that the first court's ruling on a particular issue may have *res judicata* effect on the second court's ability to hear and decide the same issue . . . .") (first emphasis added) (quotation marks and citations omitted).

### 6. A better or more effective alternative remedy

The sixth factor – "whether there is an alternative remedy that is better or more effective" – weighs slightly against dismissal. *Ameritas*, 411 F.3d at 1331. While Trisura could have brought its claim in state court, there is nothing to suggest the remedy there is "better" or "more effective." The state court surely is more familiar with the facts of the accident and legal issues presented in Sanchez's lawsuit against Blue Horse and Betancourt, but the issues related to Trisura's claim are not raised in the state action. *Cf. GEICO General Ins. Co. v. Lacayo*, No. 15-cv-20582, 2015 WL 4464020, at *3 (S.D. Fla. July 21, 2015) (finding the sixth *Ameritas* factor favored dismissal where "[the state court] can dispose of the entire controversy at once").

### 7. Whether the factual issues are important to an informed resolution

The seventh factor – "whether the underlying factual issues are important to an informed resolution of the case" – weighs against dismissal. *Ameritas*, 411 F.3d at 1331. This factor and the eighth *Ameritas* factor "only favor abstention when both the state and federal courts are asked to decide the same legal or factual issues." *Arch Specialty Ins. Co.*, 2020 WL 6888312, at *6 (quotation marks and citation omitted). As discussed, the issues in the state and federal proceedings differ. Although some facts may overlap, "the mere potential for overlap of certain facts does not demand abstention where the parties and issues are not identical." *Id.* (quotation marks and citation omitted).

### 8. Position of the state trial court

For the same reasons stated under the seventh *Ameritas* factor, the eighth factor – "whether the state trial court is in a better position to evaluate those factual issues than is the federal court" – also weighs against dismissal. *Ameritas*, 411 F.3d at 1331.

### 9. Nexus

"The first, fifth, and ninth *Ameritas* factors look to concerns of comity and the interest of the forum state in resolving the legal issues presented." *Geico Gen. Ins. Co. v. Pruitt*, No. 08-21623-CIV, 2009 WL 10666845, at *3 (S.D. Fla. Feb. 19, 2009). Thus, for the reasons stated regarding the first and fifth *Ameritas* factors, the ninth factor – "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action" – weighs against dismissal. *Ameritas*, 411 F.3d at 1331.

I conclude that the *Ameritas* factors do not support dismissal of this declaratory judgment suit, because allowing this action to proceed would not cause "[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation". *Brillhart*, 316 U.S. at 495. For those same reasons, I find that a stay of this action would not be appropriate.

## IV. RECOMMENDATION

I **RESPECTFULLY RECOMMEND** that the Court **DENY** Defendants' Motion to Dismiss Complaint for Declaratory Judgment or in the Alternative Motion to Stay, (ECF Nos. 16, 17, 19).[11]

## V. OBJECTIONS

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas*

---

[11] I raise an issue the parties have not addressed, that the Court may want to consider should it accept my recommendation that it allow this case to proceed.

As a general matter, "[t]he duty to defend is separate and apart from the duty to indemnify". *Trizec Props., Inc. v. Biltmore Constr. Co.*, 767 F.2d 810, 812 (11th Cir. 1985). A justiciable controversy over Trisura's duty to defend existed once Sanchez filed his Complaint in state court. *See Depositors Ins. Co. v. BGW Design Ltd., Inc.*, No. 17-23885-Civ, 2018 WL 1830806, at *3 (S.D. Fla. Feb. 28, 2018) (citations omitted), *report and recommendation adopted*, 2018 WL 3672246 (S.D. Fla. May 17, 2018). The duty to indemnify, on the other hand, "is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." *Id.* (quotation marks and citation omitted).

The state lawsuit is ongoing and no liability has been established. Thus, the Court may wish to dismiss without prejudice Trisura's request for relief as to its duty to indemnify, or to at least stay that request because it is tied to the ripe request regarding the duty to defend. *See Depositors Ins. Co.*, 2018 WL 1830806, at *3 (recommending dismissal without prejudice); *Mid-Continent Cas. Co.*, 297 F. Supp. 3d at 1336 (staying the request).

It also appears that this may require a dismissal without prejudice, or a stay, of Trisura's request for relief regarding the Form MCS-90 Endorsement. Trisura asks for a declaration that it has no obligations related to the accident and/or underlying lawsuit under the Endorsement. It appears that the only obligation that might arise is one of indemnification, as the Endorsement states that Trisura "agrees to pay . . . any final judgment recovered . . . resulting from negligence in the operation, maintenance or use of motor vehicles . . . ." (ECF No. 1-1 at 35).

15

*v. Arn*, 474 U.S. 140 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULLY RECOMMENDED in Miami, Florida this 13th day of May 2021.

                                                                                 *[signature]*
                                                                   CHRIS MCALILEY
                                                      UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable Kathleen M. Williams
        Counsel of record